## LANE v. SAMORA.

(Court of Civil Appeals of Texas. April 19, 1911.)

PUBLIC LANDS (§ 173*)—TEXAS SCHOOL LANDS —ABANDONMENT—EVIDENCE—SUFFICIENCY.

Evidence *held* to show abandonment of plaintiff's residence in a particular county, warranting vacation of his purchase of school land therein.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Error from District Court, Kinney County; W. C. Douglas, Judge.

Trespass to try title by R. W. Lane against L. E. Samora. Judgment for defendant, and plaintiff brings error. Affirmed.

W. L. Clamp, Joseph Jones, and Geo. M. Thurmond, for plaintiff in error. Frank Lane and John J. Foster, for defendant in error.

FLY, J. Plaintiff in error sued defendant in error in trespass to try title to 32 acres of land, and the cause was tried without a jury, and judgment rendered for defendant.

With some emendations and changes as to form, we adopt the agreed statement of the facts, which covers all points, except the occupancy of the home tract by plaintiff. These are the agreed facts:

"At the time of the application of R. W. Lane to purchase from the state of Texas the land in controversy, the land had been regularly and legally classified and appraised and valued, and was regularly and legally upon the market for sale, under the laws of the state of Texas, relative to the sale of public school lands.

"On the 9th day of November, 1907, the

---

plaintiff, R. W. Lane, made his application to purchase from the state the land in controversy; said application was filed in the General Land Office November 12, 1907, same being in every manner in legal form, and at the same time Lane paid into the state treasury the one-fortieth of the purchase price required to be paid in cash by the law, and executed the obligation for deferred payments for the land, as by law required.

"Said application of Lane was to purchase said land as additional land to his home, which was then upon the J. D. Mulkey preemption survey No. 61, situated in Kinney county, Tex., and the land in controversy is within a radius of five miles of said J. D. Mulkey pre-emption survey, and subject to the sale under the law to any actual settler residing and making his home and residence upon said Mulkey survey.

"Upon said application to purchase, above referred to, the Commissioner of the General Land Office, on the 18th day of January, 1908, awarded the land in controversy to said Lane upon his application, and the application was by the Commissioner of the General Land Office accepted and the land sold under the terms thereof to Lane.

"Within 90 days from the date of said award to him of the land by the Commissioner of the General Land Office, said Lane made and caused to be filed in the General Land Office, of the state of Texas, his affidavit of settlement upon his home tract above described, which affidavit was in all things in conformity with the law requiring such affidavit to be filed and was filed within the time required by said law.

"Since his said purchase of said land from the state, Lane has, upon the dates that the same was due and payable, caused to be paid into the state treasury all installments of interest due the state upon the purchase, and the account of Lane with the state of Texas has at all times been in good standing, and is now in good standing upon the books of the state treasury department of the state of Texas.

"On the 7th day of April, 1909, the sale and award of the land to Lane was canceled by the Commissioner of the General Land Office, and the land forfeited to the state, upon the ground that the said R. W. Lane had failed to reside upon the home tract above set out as required by law, to which the land in controversy was bought as additional land; and about April 7, 1909, the Commissioner of the General Land Office again classified said land and appraised same, and said land was placed upon the market for sale by such commissioner under the law to actual settlers, and a copy of the classification and appraisement mailed to the county clerk of Kinney county, after office hours of April 7, 1909.

"On the 13th day of April, 1909, the defendant, L. E. Samora, made application in due and legal form to purchase the land in controversy as a home section, and said application was accepted by the Commissioner of the General Land Office, and said land, on the 1st day of May, 1909, was awarded to L. E. Samora upon said application, and since the settlement of L. E. Samora upon said land he has resided upon and does now reside upon said land as an actual settler.

"At the time of filing his application, L. E. Samora paid into the state treasury the one-fourtieth of the purchase price required by law, and executed in due and legal form his obligation for the deferred payment of the purchase price of said land.

"Samora made and caused to be filed in the General Land Office, within 90 days from the date of award of said land to him, his affidavit of settlement thereon; the affidavit being in due and legal form, and the same was filed within the time required by law.

"Since the filing of his application to purchase the land and the award thereof to him, Samora has regularly paid into the state treasury each and all installments of interest due upon deferred payments upon the dates that the same is required to be paid, and his account with the state for the purchase of the land has at all times been, and is now, in good standing upon the books of the treasury department of the state."

The findings of fact by the trial judge on the only contested question of facts, that of occupancy by plaintiff of the home tract on which his purchase depends, are in substance as follows:

"Plaintiff was an actual settler upon the home tract (the J. D. Mulkey pre-emption survey No. 61, a patented section) on the date of his application to purchase the tract of school land involved in this controversy, and he and his family continuously resided thereon from said date to about November 16, 1908.

"On or about November 16, 1908, plaintiff moved from his Kinney county home on the Mulkey survey to Mineral Wells under such circumstances as to show an intention to reside in and occupy the house which he had purchased at that place, and that plaintiff did actually occupy and reside in his said Mineral Wells house continuously from that time until his return to Kinney county, with his family and household goods, about April 6, 1909, and that during said time plaintiff did not reside upon or occupy the said home tract (Mulkey survey) in Kinney county.

"His absence was not for some purely temporary purpose, and it was not for the express purpose of schooling his children, or for earning money to pay for his school land.

"Plaintiff has continuously resided upon and occupied his Kinney county home tract (the Mulkey survey) since his return thereto in April, 1909, to the present time."

The facts show that plaintiff removed to Mineral Wells and made that his home, and it is a significant fact that he only returned

to the land in Kinney county on or about the date that his purchase of the land in controversy was canceled by the Land Commissioner. Plaintiff testified that his wife and one child left Kinney county· on April 15, 1908, about three months after the land was awarded to him, and that they returned in June, and on July 5, 1908, the whole family went to Mineral Wells, and the wife and children did not return again to Kinney county until April 6, 1909, and the plaintiff himself made only two or three short visits to Kinney county during that time. He bought a home in Mineral Wells and shipped his household furniture to that point. He had no one in possession of his home in Kinney county. He was away from the house in Kinney county continuously from November 16, 1908, and until April 6, 1909, nearly five months, and his family was absent for nine months, and they appear to have returned only when a cancellation of the award of the land seemed imminent. It is true, as contended by plaintiff, that the testimony "is all one way," and we think that the decision was in accordance therewith.

The evidence of appellant shows that he and his family left his home in Kinney county, a residence ·in which had obtained him an award of the land in controversy, and moved to a county in a distant part of the state; that he acquired a home in that county and lived therein for at least nine months; and that he only returned to Kinney county when the award of the land to him was about to be set aside. If this was not an abandonment of the home place in Kinney county, and if there was not a break in the occupancy of the land required by the statute, then no question of abandonment could ever arise when the purchaser returns to the land. This is purely a fact case, not to be decided by the peculiar views of the Supreme Court on facts in Bustin v. Robison, 102 Tex. 526, 119 S. W. 1140, or any other case, but to be decided by this court under the Constitution and·laws, which provide that "the judgment of the Courts of Civil Appeals shall be conclusive in all cases on the facts of the case." We shall exercise this constitutional prerogative, independent of any invasions of it or disregard for its imperative provisions.

The judgment is affirmed.